IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALMEDA ULITCHNEY,
         Plaintiff

v.

JOHN E. POTTER,
POSTMASTER GENERAL,
UNITED STATES
POSTAL SERVICE,
         Defendant

No. 3:04cv991

(Judge Munley)

## MEMORANDUM

Before the court for disposition is the defendant's motion for summary judgment in this gender discrimination in employment action. The plaintiff is Almeda Ulitchney, an employee of Defendant John E. Potter, Postmaster General, United States Postal Service. The matter has been fully briefed and is ripe for disposition.

**Background**

At the time in question, defendant employed plaintiff at the Wilkes-Barre, Pennsylvania Processing and Distribution Center ("PDC"). In 2003, the PDC obtained authorization to hire three (3) maintenance custodians. (Def Ex. B, at Aff. C, Philip J. Conrad, Jr., plant manager). Employment positions with the defendant are broken down into various divisions called "crafts." Plaintiff's position was in the "Clerk Craft" whereas the custodian positions were in the "Maintenance Craft." In order to qualify for the position of maintenance custodian, interested individuals were required to take an examination known as the 916 Examination. Plaintiff took the 916 Examination in April 2003. (Def. Ex. A, Pl. Dep. at 15).

Defendant contends that in order to fully apply for the position, an in-service employee such as the plaintiff must, in addition to taking the examination, submit a written request to transfer from one craft to another.

Plaintiff, however, did not submit a written transfer request. Only one in-service employee, John Wright, filed a written request to transfer, and defendant hired him for one of the custodial positions. The defendant then, on July 21, 2003, opened up consideration of outside applicants to hire for the two remaining positions.

Sometime in mid-July 2003, plaintiff learned that Wright had been accepted for transfer into Maintenance Craft. (Def. Ex B, Aff. A, Plaintiff.). At the same time, she learned that outside applicants were being scheduled for interviews for the two remaining custodial positions. She inquired as to why she had not been scheduled for an interview. She was told that it was because she had to submit a letter requesting transfer before she could qualify for an interview. (Id.).

On July 25, 2003, plaintiff did submit a transfer request letter to the Philip Conrad, Jr., the Plant Manger and Manager of Maintenance, Len Michalski. (Pl. Ex. A). After submitting the request for transfer, Michalski told plaintiff that she could not be interviewed because outside applicants' interviews were already scheduled. (Def. Ex. B, Aff. C, Conrad Aff.) Defendant subsequently hired two outside applicants, both male, for the two open positions. (Id.).

In October 2003, plaintiff filed an Equal Employment Opportunity ("EEO") complaint asserting that the defendant's discriminated against her based upon sex when she was denied an interview for a Custodial Maintenance position. (Def. Ex. B, pg. 64). Subsequently, plaintiff instituted the instant action. She asserts that the defendant discriminated against her based on her gender in violation of Title VII of the Civil Rights Act of 1964 when defendant failed to consider her and hire her for a Craft Maintenance position. (Compl. ¶ 17). Plaintiffs seeks "back pay, front pay, loss of seniority, lost employment benefits,

compensatory damages, nominal damages, liquidated damages, emotional distress, embarrassment, humiliation, attorney fees, expenses, pre- and post judgment interest delay damages, letters of good reference, reformation of Plaintiff's employment records, employment benefits and other such legal and equitable relief as allowable at law." (Compl. pg. 4). At the close of discovery, the defendants moved for summary judgment bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, for gender discrimination, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Standard of review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.

3

International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

Title VII provides: "It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire . . . any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin. . . ." 42 U.S.C. § 2000e-2. In order to withstand a summary judgment motion, a plaintiff suing for employment discrimination under Title VII must establish that the plaintiff's protected trait "played a role in the employer's decisionmaking process and had a determinative influence on the outcome of that process." Monaco v. American Gen. Assurance Co., 359 F.3d 296, 300 (3d Cir. 2004). A plaintiff may meet this burden with either direct evidence sufficient to satisfy the requirements of Justice O'Connor's concurring opinion in Price Waterhouse v. Hopkins, 490 U.S. 288 (1989), or with indirect

4

evidence sufficient to satisfy the three-step burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) three-step burden-shifting analysis. Id. In the instant case, the plaintiff has not provided direct evidence of discrimination; therefore, we will examine her claims with the McDonnell Douglas framework.

Under McDonnell Douglas, the plaintiff must first make a *prima facie* showing of discrimination. Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 352 n.4 (3d Cir.1999). In a failure to hire/promote case, a plaintiff's *prima facie* case is established when she demonstrates that: (i) she belongs to a protected class; (ii) she applied for and was qualified for a job the employer was trying to fill; (iii) though qualified, she was rejected; and (iv) circumstances give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class. Jones v. School District of Philadelphia, 198 F.3d 403, 410-11 (3d Cir.1999).

In the instant case, defendant asserts that the plaintiff cannot establish a *prima facie* case of discrimination based on sex because she never applied for the job. Georgia Ferguson, Human Resource Specialist for the Central Pennsylvania District explained the application process utilized by the defendant. When a position opens up, the first ones considered for the position are in-house applicants who have submitted a request to move from one craft to another. (Def. Ex. F., Ferguson Dep. at 105). No specific application or form must be completed, however, the request must be made in writing. (Id. at 111-13). These in-house applicants are considered first. If more positions are available after considering the in-house applicants, then the defendant considers outside applicants, the defendants call this utilizing a "hiring worksheet." Once the defendant starts to consider outside people for the position, it claims that it

5

cannot consider someone from in-service.

Defendant contends that when the in-service candidates were considered for the position, plaintiff had not yet submitted her request for a transfer. By the time she had submitted the written letter of interest, outside candidates were being considered, and it was too late to consider in-service applicants. Thus, because plaintiff's request was not timely, she did not officially apply for the position and has failed to meet her *prima facie* case.

Plaintiff disagrees with defendant. She claims that the Maintenance Selection System ("MSS") Handbook does not state that a letter of intent is required to apply for a position. Plaintiff asserts that sitting for and taking the examination was in fact application for the position. Moreover, Ferguson could not point out the section in the MSS Handbook that prohibits a career employee from being considered once the entrance date closes. (Def. Ex. F., Ferguson Dep. at 85). Michael Guerriero, the Maintenance Craft Director, confirms that the MSS handbook contains nothing stating that a transfer letter is mandatory. (Pl. Ex. B, Guerriero Aff.). James O'Donnell, the president of the Wilkes-Barre Area Postal Workers' Union also notes that the MSS Handbook does not require a transfer request letter prior to an applicant's interview. (Pl. Ex. A, O'Donnell Aff.).

Accordingly, when the evidence is viewed in the light most favorable to the plaintiff, we find that she has in fact created a genuine question of fact as to whether she was required to submit a transfer letter to apply for the position or whether is was sufficient to take the exam. The remainder of the elements of her *prima facie* case are not in dispute.[1] Thus, we find that for purposes of this

---

[1] As a woman, she is a member of a protected class. She was qualified for the position; however, men were hired instead of her. Jones, 198 F.3d at 410-11

summary judgment motion, the plaintiff has established her *prima facie* case.

Once a *prima facie* case has been established, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. <u>Jones</u>, 498 F.3d at 410. Defendant contends that plaintiff did not properly apply for the position, thus she was not hired. As set forth above, questions of fact exists regarding whether plaintiff utilized the proper procedure to apply for the position. We, therefore, cannot grant summary judgment in favor of the defendant, and the summary judgment motion will be denied. An appropriate order follows.

---

(setting forth the requirements of a *prima facie* case in a Title VII failure to hire case).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALMEDA ULITCHNEY, | : | No. 3:04cv991 |
| Plaintiff | : | |
| v. | : | (Judge Munley) |
| JOHN E. POTTER, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE, | : | |
| Defendant | : | |

## ORDER

**AND NOW**, to wit, this 16th day of June 2006, the defendant's motion for summary judgment (Doc. 26) is hereby **DENIED**.

BY THE COURT:

s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court